IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. MISKE, JR.,　(1)<br>JOHN B. STANCIL,　　　　(2)<br>DAE HAN MOON,　　　　 (5)<br>PRESTON M. KIMOTO,　　(6)<br>JARRIN K. YOUNG,　　　 (11)<br>DELIA FABRO-MISKE,　　(12)<br>JASON K. YOKOYAMA,　 (13)<br><br>　　　　Defendants. | Case No. 19-cr-00099-DKW-KJM<br><br>**ORDER DENYING MOTION TO CHANGE VENUE AND JOINDER IN SAME** |

On January 30, 2023, Defendants Michael Miske, John Stancil, Preston Kimoto, Jarrin Young, Delia Fabro-Miske, and Jason Yokoyama filed a motion to change venue. Shortly thereafter, Defendant Dae Han Moon joined in the motion. All Defendants contend that a survey of individuals in Hawai'i reflects actual prejudice were the Court to hold trial in this District. Moon also contends that prejudice should be presumed because of pretrial publicity specific to him.

Having reviewed the motion and joinder, the further briefing on both, the supporting exhibits, and the relevant case law, and having considered the oral argument presented on March 24, 2023, it is clear that Defendants have failed to

establish that venue should be transferred from Hawaiʻi at this stage of the proceedings for several reasons. First, with respect to pretrial publicity, which only Defendant Moon relies upon, the record does not come close to demonstrating a "saturation" or "barrage" of inflammatory publicity regarding this case. Moreover, as Moon himself acknowledges, the further supposed barrage that he anticipated at the time of his joinder did not come to pass. Second, with respect to actual prejudice, the survey upon which Defendants rely is critically flawed. Specifically, it fails to ask one of the relevant and material questions for purposes of actual prejudice: could the individual act impartially. Further, even if the Court were to accept at face value the results of the survey, these results indicate that there are still a substantial number of persons in this District from which the jury will be drawn who are either unaware of anything related to this case or are aware but who have yet to form any opinions. Therefore, as more fully explained below, the motion to change venue, Dkt. No. 750, and joinder, Dkt. No. 758, are DENIED.

## RELEVANT PROCEDURAL BACKGROUND

On January 30, 2023, a motion to change venue was filed, followed by Moon's joinder therein. Dkt. Nos. 750, 758. On February 27, 2023, the government opposed the motion and joinder. Dkt. No. 807. Defendants have filed a reply in support of the motion, and Moon has filed an "Addendum and Errata" to

his joinder.  Dkt. Nos. 800, 820.  On March 24, 2023, the Court held a hearing relating to these filings.  Dkt. No. 824.  This Order now follows.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 21(a) provides that a criminal proceeding "must" be transferred if the court "is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  In more practical terms, as Defendants observe, venue may be changed when there is either a showing of presumed or actual prejudice.  Dkt. No. 750-1 at 5 (citing *Skilling v. United States*, 561 U.S. 358 (2010)).  Presumed prejudice exists when "the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime."  *Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011).  Actual prejudice exists when "voir dire reveals that the jury pool harbors actual partiality or hostility against the defendant that cannot be laid aside."  *Id*. (quotations and alterations omitted).

## DISCUSSION

Between them, Defendants argue that both presumed and actual prejudice exist here.  The Court addresses each in turn below.

**I.    Presumed Prejudice**

Moon is the only Defendant who contends that presumed prejudice exists

3

here.[1]   He argues that his conviction in State court for a 2016 murder has earned him "significant local notoriety", his appeal of the conviction has created "substantial media coverage", and the potential reversal of his conviction would "inevitably" result in him being in the news.   Dkt. No. 758 at 4-7.

The Court does not agree that the pretrial publicity Moon describes has caused anything close to presumed prejudice at this juncture.   Notably, there has been no saturation or "barrage" of the community with inflammatory publicity at any point to date in this case.   The evidence to which Moon cites does not suggest so either. Instead, at least with respect to the crimes charged in this case, he principally relies upon the articles of an investigative journalist/blogger for a local news organization. Moon cites no case, however, for the proposition that one reporter alone could so "saturate" the community with prejudice so as to warrant a change of venue.[2]   Nor does he offer evidence indicating that such saturation has occurred here, particularly as the cited journalist does not represent a media source with widespread circulation. As for his unrelated State conviction, to the extent that is even relevant to the instant

---

[1] At oral argument, counsel for the non-Moon Defendants confirmed that the motion to change venue was based on actual, not presumed, prejudice.

[2] The only case Moon cites to support his position is *Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005).   Dkt. No. 758 at 5-7.   Contrary to his suggestion, this case is nothing like *Daniels*, where the Ninth Circuit observed that the victims of the crime were "turned into posthumous celebrities", the police were "deluged" with calls from citizens offering tips on the investigation, and a memorial statue to the victims was erected across the street from the courthouse where the defendant was tried.   *Daniels*, 428 F.3d at 1211. Moon offers no evidence of such celebrity status having been achieved here, no evidence of a deluge of calls to a law enforcement tip line, and no evidence of any memorial statue having been planned, much less built.

analysis, Moon was convicted in September 2018−more than four years ago. And, although he contends that his recent appeal has generated "substantial" media coverage, he acknowledges, not only that his appeal has now been rejected, but there has been minimal coverage of the decision to affirm the conviction. *See* Dkt. No. 800 at 2; *see also Patton v. Yount*, 467 U.S. 1025, 1032 (1984) (finding no "manifest error" in a trial court concluding that a jury was impartial where four years had passed between the "height" of adverse publicity and trial). There is, thus, no presumed prejudice as it relates to Moon (or any Defendant) at this juncture in the case.

II.     **Actual Prejudice**

All Defendants argue that actual prejudice exists here, relying principally on a survey conducted by David Weinberg. Defendants assert that the survey, of 153 people in Hawaiʻi, shows that 65 percent of the survey group was aware of this case. Of those "aware" individuals, 84 percent stated that Miske is guilty, while 62 percent stated that the Defendants other than Miske are guilty. Dkt. No. 750-1 at 17. According to Weinberg, in light of these figures, especially when contrasted with the results of a similar survey that he conducted in Las Vegas, Nevada, selecting an unbiased jury in this State is "insurmountable" and will be particularly so, given that "awareness" is expected to increase as the start of the September 2023

trial approaches.  1/30/23 Decl. of David Weinberg at ¶ 24, Dkt. No. 750-2; 3/13/23 Suppl. Decl. of David Weinberg at ¶¶ 14-19, Dkt. No. 820-1.

The Court disagrees for at least two principal reasons.  First, the conducted survey is critically flawed from the perspective of the legal determination the Court must make in deciding whether actual prejudice exists.  Here, the survey asked, *inter alia*, whether the respondent had heard of a case involving Miske and whether the respondent thought Miske and/or the other Defendants were guilty based on what they had heard.  Dkt. No. 750-4 at 4-5.  Although actual prejudice exists when "voir dire reveals that the jury pool harbors actual partiality or hostility against the defendant *that cannot be laid aside*[,]" *Hayes*, 632 F.3d at 508 (emphasis added),[3] the survey did not ask any questions relating to whether a respondent's belief about Miske or the other Defendants could be laid aside.

Put another way, according to Defendants, they have brought the instant motion in advance of voir dire in order to avoid potential wasted time and money

---

[3]Although *Hayes* provides the definition of "actual prejudice" Defendants offer in their motion to change venue, Dkt. No. 750-1 at 5, at the conclusion of oral argument, counsel for one of the Defendants provided an arguably different standard, citing *United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000): "actual bias is 'bias in fact'−the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id*. at 1112 (quotation and alteration omitted).  Closer inspection, however, reveals no difference.  Notably, in *Gonzalez* and each of the decisions to which it cites as examples of "actual bias", the "biased" jurors were asked, often repeatedly, whether they could render an impartial verdict despite their views.  *Id*. at 1112-14.  In other words, the "inference" to which counsel alluded at oral argument is not drawn from potential jurors stating that they have a belief about a defendant's guilt; rather the inference is drawn from their equivocal answers to whether they could render an impartial verdict, despite their beliefs.  Here, because no such question was asked, the Court cannot draw any "inferences" from the survey.

that would be incurred if an unbiased jury cannot be selected. While that is a goal the Court shares, if Defendants wished to avoid the time and cost of voir dire in Hawaiʻi, their survey needed to actually *replicate* relevant questions that would be asked during voir dire in order for the Court to take any meaningful value from the survey. Defendants' contention that any such question cannot be asked in relation to previously held views is absurd. Dkt. No. 820 at 3-4; *see also* Suppl. Decl. of David Weinberg at ¶ 13, Dkt. No. 820-1. The responses to such questions are precisely what the Court needs to inform the actual prejudice determination and, at some point, they will be asked, irrespective of Weinberg's speculation as to how a person may respond or the constraints imposed on him by his professional guidelines.[4]

Second, even if the survey results were to be accepted at face value, the Court disagrees that they show forming a jury in this State will be "insurmountable." As explained above, 65 percent of survey respondents were aware of this case and 84 percent of those aware think Miske is guilty. This means that, of the total pool of 153 survey respondents, approximately 54-55 percent think Miske is guilty. Read another way, approximately 45-46 percent of the total survey respondents either are unaware of this case or have no opinion on the guilt (or lack thereof) of Miske. At

---

[4] Apparently, the "ASCTC Professional Code" advises *against* asking whether survey respondents can set aside their views. Dkt. No. 820 at 3. If that is the case, then this Court doubts there is any value to a survey conducted pursuant to the "ASCTC Professional Code" for purposes of determining whether "actual prejudice" should result in a change of venue.

this time, the Court plans to send "ability-to-serve" questionnaires to 2,000 individuals. Historically, in this District, roughly 20 percent of individuals fail to timely respond to such a questionnaire. If that holds true here, this would leave a pool of 1,600 individuals. Forty-five percent of 1,600 equals 720. In other words, based upon the numbers presented, there would be roughly 720 *unbiased* individuals from which to draw a jury of, at most, 20 people. Put in percentage terms, the Court would need less than 3 percent of the 720 unbiased individuals to form a jury in this case. In this light, even with anticipated excusals due to the potential length of this case and for other matters, the Court does not currently have a doubt that an impartial jury can be selected in Hawaiʻi.[5]

## CONCLUSION

For the reasons set forth herein, the motion to change venue, Dkt. No. 750, and the joinder therein, Dkt. No. 758, are DENIED.

IT IS SO ORDERED.

DATED: March 30, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

[5] Defendants cite *United States v. Sablan*, 2014 WL 7335210 (E.D. Cal. Dec. 19, 2014), where a survey showed "actual bias in more than half the potential jury pool" which, in part, prompted the court to grant a motion to change venue. *Id.* at *2-3. As explained, here, the survey does not show "actual prejudice" as that term is defined for purposes of the instant analysis. There are also material factual differences between this case and *Sablan*. In any event, even if half the potential jury pool here exhibited "actual bias", this Court disagrees that the same should result in the transfer of this case because there is still the other, unbiased half of the pool from which to draw.

---

*United States v. Miske, et al.,* Case No. 19-cr-00099-DKW-KJM; **ORDER DENYING MOTION TO CHANGE VENUE AND JOINDER IN SAME**