IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. MISKE, JR.,     (1)<br>JOHN B. STANCIL,              (2)<br>DELIA FABRO-MISKE,       (12)<br>JASON K. YOKOYAMA,     (13)<br><br>Defendants. | Case No. 19-cr-00099-DKW-KJM<br><br>**ORDER DIRECTING<br>SUPPLEMENTAL BRIEFING** |

## ORDER

Having considered the parties' briefing on the motions in limine filed in this case and the related oral argument, the Court directs supplemental briefing as set forth and permitted below on the following matters.

1.     The government has indicated its intent to use conduct allegedly violative of 18 U.S.C. Section 1512 to establish, at least in part, a pattern of racketeering activity for purposes of Count One of the Third Superseding Indictment (TSI).  As best the Court can discern, the principal dispute is one of timing.  Specifically, the TSI alleges, in Count One, that various individuals, including Defendant Michael Miske, conspired to engage in a pattern of racketeering activity, including acts indictable under Section 1512, from a date in

or about the late 1990s up to a date in or about June 2020. The TSI further alleges, in Counts 21 and 22, that Miske violated Section 1512(c)(2) from a date on or about, respectively, September 15, 2017 and January 2, 2019, and continuing until on or about August 11, 2020.

In one of its unnumbered motions in limine, Dkt. No. 1048, the government argued, *inter alia*, that evidence will show Miske conspired with others to prepare false or altered character letters to assist him in securing pretrial release in violation of Section 1512(c)(2).[1] The government further asserted that this evidence, apart from being relevant to Counts 21 and 22, which charge substantive violations of Section 1512(c)(2), "will also be relevant to the racketeering conspiracy charged in Count 1[,]" as the evidence is relevant to the "means and methods" of the racketeering conspiracy and the pattern of racketeering activity to which Miske and his alleged coconspirators agreed. *Id.* at 3. In their opposition to this motion, the remaining trial-defendants in this case (collectively, Defendants) argued that evidence related to alleged violations of Section 1512(c)(2) is not relevant to Count 1 principally because of when the racketeering conspiracy is alleged to have ended. Specifically, Defendants argued that, in the TSI, the racketeering conspiracy is alleged to have ended in June 2020, but the acts

---

[1] This issue also arose with respect to the government's motion in limine seeking judicial notice of certain court filings, Dkt. No. 1061.

giving rise to the alleged violations of Section 1512(c)(2) occurred in July and August 2020, one to two months later. At oral argument, as well as in an opposition to a motion to sever Counts 21 and 22 filed earlier in this case (Dkt. No. 769), the government disagreed that relevant racketeering acts giving rise to the alleged charges in Counts 21 and 22 did not occur before the end of the racketeering conspiracy charged in Count 1, pointing to "metadata" showing that drafts of the "fraudulent" character letters existed in 2017 and 2019, respectively. *Id*. at 15-16.

In light of the foregoing and other briefing in this case and the record generally (including the TSI), the Court directs supplemental briefing on the following. First, the parties' briefing on this matter contains a lack of fact-specific case law supporting their respective positions that relevant racketeering acts occurred during or after the alleged end of the conspiracy charged in this case. The parties' supplemental briefing should, therefore, cite, if any, *fact-specific* case law on whether relevant racketeering acts, like the ones allegedly relevant here, occurred during or after a charged racketeering conspiracy. In particular, the parties should also focus upon *which acts* are relevant for this analysis. The government contends that it includes the preparation of fraudulent documentation. Defendants contend that it is the *filing* of allegedly fraudulent documentation, or, at

best, the initiation of the legal matter to which the "fraudulent" documentation relates, such as the motion to detain here.  The parties should also address the relevance of Defendants being charged in Count 1 with *conspiring* to commit a pattern of racketeering activity, and the effect, if any, this may have on the analysis.  Finally, the parties should address whether the government's potential use of acts related to alleged violations of Section 1512(c)(2), if permitted, should be limited to showing the "means and methods" of the charged racketeering conspiracy or should also be allowed to establish a pattern of racketeering activity.

The government's and Defendants' separate briefing on the issues set forth in the preceding paragraph shall be limited to ten (10) pages, and shall be due on or before December 29, 2023.

2. In its motion in limine regarding the exclusion of witnesses from the courtroom during trial, Dkt. No. 1057, the government moved for, *inter alia*, three family members of Johnathan Fraser to be present during trial, even if they are called as trial witnesses.  The government argued this is permissible as an exception to Federal Rule of Evidence 615's exclusionary rule because, in the Crime Victims' Rights Act (CVRA), Congress created a right for "crime victims" not to be excluded from any public court proceeding.  The government further argued that Fraser's family members are such "crime victims" under the CVRA

because, therein, that term is defined as including family members of a "deceased" victim, such as, according to the government, Fraser. *Id*. at 5. Defendants oppose this request, arguing that there has been no "legal finding" that Fraser is deceased. Dkt. No. 1173 at 3-5.[2]

In their briefing on this issue, the parties cite no fact-specific and relevant case supporting their respective positions. Rather, to the extent law is cited, it is merely to regurgitate the relevant language of the CVRA. Because the Court's own initial independent research has not provided clarity to the dispute, the Court directs supplemental briefing as follows. Specifically, the parties are directed to cite *fact-specific* case law, if any, supporting their respective positions that Fraser's family members either should or should not be excluded from the courtroom during trial. In particular, the parties should focus on whether any case law requires a "legal finding" that a victim is deceased, as Defendants contend, in order for the victim's family members to be allowed in a courtroom. Or, conversely, whether there is any case law supporting the government's position, which, given

---

[2]Defendants also argue that, even if the family members are "crime victims" for purposes of the CVRA, they should be given the opportunity to show, by clear and convincing evidence, that the family members' testimony would be "materially altered" if they heard other testimony. Dkt. No. 1173 at 4-5. Defendants ignore, however, that, in their opposition to the motion in limine, they *were* given an opportunity, at least a *prima facie* one, to show that the testimony would be altered. Defendants, though, made no effort to use the opportunity they now urge. In fact, Defendants do not even conclusorily assert that the family members testimony would be altered. Instead, at most, they contend that the testimony "may" change. *Id*. at 5. The Court is, thus, unconvinced that this is a reason to exclude the family members from the courtroom.

that it does not cite anything to support the assertion that Fraser is deceased, appears to be based upon the allegations of the TSI. Should the parties find any relevant case law, or even helpful legislative history concerning the CVRA, the parties should also explain whether a burden of proof exists for establishing the relevant issue here.

The government's and Defendants' separate briefing on the issues set forth in the preceding paragraph shall be limited to ten (10) pages, and shall be due on or before December 29, 2023.

3. In their motion in limine No. 20, Dkt. No. 1074, Defendants argued that an incident in August 2012 at the M Nightclub is not relevant to this case. Specifically, Defendants asserted that the incident involved a dispute over whether a customer would receive a "refund" for a "bottle service fee." The refund was allegedly refused and, at some point, a physical altercation occurred between the customer and the nightclub's security staff. *Id*. at 2-3. Defendants argued that this incident was neither indictable as an extortionate credit transaction nor as an interference with commerce by robbery or extortion. *Id*. at 3-4.

In contrast, the government offers a different factual version, and accompanying legal consequences, of the incident. *See* Dkt. No. 1141. According to the government, on the night in question, M Nightclub (and Miske)

"extended credit" to a customer for a second bottle of alcohol "by agreeing to defer payment" on the bottle. *Id.* at 1. After the customer refused to pay the "defer[red] payment," M Nightclub (and Miske) "then used physical force to extort repayment of this credit." *Id.* at 1, 3. The government argued that this conduct violates a federal statute punishing "extortionate means to collect or attempt to collect any extension of credit." *Id.* (quotation omitted). The government also argued that this incident is relevant to how the alleged "Miske Enterprise" operated and, thus, is relevant "enterprise proof." *Id.* at 4–5.

The Court directs supplemental briefing as follows. First, the parties are instructed to provide a factual proffer for their competing versions of the incident in question.[3] In particular, the facts behind whether the customer was allegedly physically assaulted for requesting a *refund* of a "bottle service fee" or for *refusing to pay* a "defer[red] payment" on a second bottle of alcohol are unclear and may be relevant. In addition, the government is instructed to provide a factual proffer for the assertion that this incident constitutes relevant "enterprise proof" in that it allegedly reveals how the "Miske Enterprise" operated. Second, the parties are instructed to provide supporting or opposing case law for their respective positions

---

[3] Contrary to the government's contention, simply because there was a "dispute over a bar bill" does not mean the Court can rule on the motion in limine. *See* Dkt. No. 1141 at 1 n.1. Among other things, a "dispute over a bar bill" does not necessarily mean that an extortionate extension of credit occurred.

7

that the alleged conduct either did or did not constitute an extortionate extension of credit for purposes of Section 894.  The parties should do so for *both* versions of events, assuming both remain after the factual proffer required above.  In particular, both parties appear to accept that, at least in part, the existence of an alleged buy-one-get-one-free deal on the night in question played some role in the events that transpired.  *See* Dkt. No. 1074 at 2; Dkt. No. 1141 at 2-3.  The parties are, therefore, instructed to cite case law supporting or disputing the proposition that the "free" bottle in a buy-one-get-one-free deal constitutes an extension of credit, as the government appears to contend.  *See* Dkt. No. 1141 at 2-3.

The government's and Defendants' separate briefing on the issues set forth in the preceding paragraph shall be limited to fifteen (15) pages, and shall be due on or before January 5, 2024.[4]

IT IS SO ORDERED.

DATED:   December 14, 2023 at Honolulu, Hawai'i.

/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

---

*United States of America v. Michael J. Miske, Jr.*, Cr. No. 19-00099 DKW-KJM; ORDER DIRECTING SUPPLEMENTAL BRIEFING

---

[4]So it is clear, the Court expects three separate briefs from the government and three separate briefs from Defendants that comply with the page limitation for each of the three numbered topics discussed in this Order.