IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. MISKE, JR.,   (1)<br>JOHN B. STANCIL,             (2)<br>DELIA FABRO-MISKE,       (12)<br><br>Defendants. | Case No. 19-cr-00099-DKW-KJM<br><br>**SECOND ORDER ON MOTIONS IN LIMINE** |

On December 14, 2023, the Court ruled on numerous motions in limine, while also directing supplemental briefing on issues arising from several of them. Dkt. Nos. 1192-93. The Court is now in receipt of said supplemental briefing. Dkt. Nos. 1200-01, 1205-06, 1217, 1228. In addition, on December 27, 2023, the government requested clarification of the Court's December 14, 2023 rulings with respect to two of the motions in limine. Dkt. No. 1198 at 20-23. The Court is now in receipt of the remaining trial defendants' (collectively, Defendants) responses to those clarification requests. Dkt. Nos. 1208-09. Having considered the aforementioned briefing on these matters, the Court rules as follows with respect to the same.

**Supplemental Briefing**

1.      The Court directed supplemental briefing on whether evidence related to alleged violations of 18 U.S.C. Section 1512, charged in Counts 21 and 22 of the Third Superseding Indictment (TSI), should be admissible for purposes of Count 1 of the TSI, which charges a racketeering conspiracy.   Having reviewed the parties' supplemental briefing, and based upon the government's factual proffer in its supplemental brief, Dkt. No. 1200 at 1-6, the government's motions in limine, Dkt. Nos. 1048 & 1061, are GRANTED to the extent that evidence concerning the acts charged in Counts 21 and 22 is admissible to establish a conspiracy to engage in a pattern of racketeering activity, as charged in Count 1.   This includes both the filing of the documents at issue in Counts 21 and 22 and the acts preceding said filings, as set forth in the government's factual proffer.   Here, Defendants are charged in Count 1 with conspiring to engage in a pattern of racketeering activity. Therefore, the alleged acts preceding the filing of the documents, and falling within the timeframe of the charged conspiracy, are clearly relevant and not unduly prejudicial.  *See Salinas v. United States*, 522 U.S. 52, 65 (1997) (explaining that a "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt

the goal of furthering or facilitating the criminal endeavor.").[1]  As for the filing of the documents, although those acts took place outside the temporal scope of the conspiracy charged in Count 1, the Court finds the acts relevant and not unduly prejudicial.  *See United States v. McGowan*, 816 F. App'x 387, 392-393 (11th Cir. June 10, 2020) (citing *United States v. Meester*, 762 F.2d 867, 876 (11th Cir. 1985) for the proposition that "evidence that members of a drug conspiracy committed murder after the time period alleged in the indictment was admissible to show the continuing nature of the drug trafficking conspiracy").

2. The Court directed supplemental briefing on whether three family members of Johnathan Fraser should be excluded from the courtroom under Federal Rule of Evidence 615's exclusionary rule.  Having reviewed the parties' supplemental briefing, the Court GRANTS the government's motion in limine, Dkt. No. 1057, to the extent that the three family members of Johnathan Fraser identified in said motion will not be excluded from the courtroom during trial, even if they should testify.  Specifically, the government's supplemental brief cites various cases, which, albeit not entirely on-point, provide persuasive support for its position.  *See* Dkt. No. 1201 at 1-2.  In contrast, Defendants acknowledge that

---

[1]Defendants argue that the "relevant act to the conspiracy" is the act of filing the underlying documents.  Dkt. No. 1205 at 1.  Given that Defendants are charged with *conspiracy* in Count 1, the Court disagrees, as any one of the acts alleged in the government's factual proffer, if found by a jury to be furthering or facilitating the alleged criminal endeavor, would be relevant.

3

they have found no case law supporting their position, Dkt. No. 1206 at 2, and the Court does not find persuasive their reliance upon the Hawai'i probate code. Therefore, in light of the allegations in the TSI, the Court finds that the pertinent family members will be allowed in the courtroom during trial.

3.      The Court directed supplemental briefing on whether evidence related to an incident in August 2012 at the M Nightclub would be permitted during trial. Having reviewed the parties' supplemental briefing, Defendants' motion in limine No. 20, Dkt. No. 1074, is GRANTED IN PART and DEFERRED IN PART as follows. First, the motion is GRANTED to the extent that the government will <u>not</u> be permitted to argue or introduce evidence of the August 2012 incident as an "extension of credit" under 18 U.S.C. Section 891. The factual background of this incident is disputed. Nonetheless, the incident is not admissible as an extension of credit *under the government's version of events*. According to the government, the "extension of credit" was the provision of a "free bottle" as part of a "buy-one-get-one free deal…." Dkt. No. 1217 at 1, 6. The government cites no law, nor can the Court comprehend a common-sense reason, supporting the proposition that a *free* bottle (or free anything) constitutes an extension of credit.[2]  *See* Black's

---

[2]Instead, the government cites case law that it contends supports the proposition that the use of checks or credit cards constitutes an extension of credit. Dkt. No. 1217 at 4-5. Neither of those things, however, is the same as being provided something for *free*. In addition, *United States v. Cassano*, 132 F.3d 646 (11th Cir. 1998), does not stand for the proposition that "pay[ing] the

4

Law Dictionary 778 (10th ed. 2014) (defining "free" as, *inter alia*, "[c]osting nothing; gratuitous"). Second, the motion is DEFFERED to the extent the government seeks to introduce evidence of the August 2012 incident as "enterprise proof" of how the alleged "Miske Enterprise" operated. As mentioned, the parties do not agree on the facts underlying this incident. Based upon those competing stories, the Court is not currently in the position to rule on whether the incident is relevant as "enterprise proof" in this case. *See* Dkt. No. 1228 at 6 n.1 (Defendants conceding that their motion in limine should be deferred with respect to whether the incident is admissible as enterprise proof).

**<u>Requests for Clarification</u>**

4. The government requested clarification on whether it would be able to argue that an incident in May 1995 was "enterprise proof" for purposes of Count 1 of the TSI, following the Court's December 14, 2023 ruling that the same incident would not be admissible as a prior act under Federal Rule of Evidence 404(b). Dkt. No. 1198 at 20-22. Having reviewed the parties' briefing on this matter, the government's request to use the May 1995 incident as "enterprise proof" is DENIED. In Count 1, the TSI charges Defendants, among others, with conspiring

---

balance on a credit card bill" is an extension of credit. The relevant "extension of credit" in *Cassano* was, instead, the defendant agreeing to extend the time for another individual to repay money that the defendant suspected had been stolen. *Id*. at 650-651.

5

to engage in a racketeering conspiracy "[f]rom a precise date unknown, but by at least in or about the *late* 1990s, up to and including June 2020…." Dkt. No. 673 at 9 (emphasis added). While the precise contours of the "late 1990s" may be subject to a reasonable measure of dispute, dispute that may require further clarification during trial, one time that the "late 1990s" does not encompass is May *1995*, which is squarely in the *mid*-1990s. Contrary to the government's contention, therefore, Dkt. No. 1198 at 21, the incident is not relevant to the charged conspiracy. In addition, the Court is unconvinced by the government's assertion that the incident is "probative of the means and methods of the charged racketeering conspiracy," untethered temporally as it is  *See id*. As a result, the government will not be allowed to use the May 1995 incident *for any purpose* at trial.[3]

5. Finally, the government requested clarification with respect to the use of reports of interview (ROIs), such as Federal Bureau of Investigation 302s, at trial. Dkt. No. 1198 at 22-23. In ruling on the government's motion in limine to admit prior statements and preclude improper use of 302s, the Court, *inter alia*, granted the motion to the extent that statements within ROIs would not be

---

[3]This specific incident is different from the conduct generally referenced in the government's motion in limine to admit enterprise proof, Dkt. No. 1039, such as unspecified assaults, which the Court, as a result, deferred ruling upon until trial.

admissible unless adopted and denied the motion in all other respects. Dkt. No. 1192 at 5. In other words, while the government may not agree, the December 14, 2023 Order is clear: *if adopted* by a witness, statements within ROIs may be used at trial. That necessarily means that witnesses may be asked if such statements are, in fact, those they made. For instance – a questioning party may show the statement, without reference to its origin in an ROI, to a witness and, after the witness' review of the same, ask the witness whether he or she adopts the statement as his or her own. Should the witness adopt the statement, or part of the statement, the portion adopted may be read to the jury. Should the witness not adopt the statement, then the statement may <u>not</u> be read or otherwise presented in court. In other words, the questioning party may not read or otherwise include the statement in any question they ask a witness *until* the statement is adopted, if at all.[4]

IT IS SO ORDERED.

Dated: January 12, 2024 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

[4] This appears to be consistent with what the government itself acknowledges as acceptable. *See* Dkt. No. 1046 at 4 ("To be sure, an ROI may give the defense a good faith basis to ask a witness whether they previously made a statement. But if the defense is not satisfied with the answer they receive, they should not be permitted to publish or introduce the contents of the 302 as a prior inconsistent statement.") (quotation and citation omitted).